1
2
3
4
5
6
7                    **UNITED STATES DISTRICT COURT**
8                         **DISTRICT OF NEVADA**
9
10   MARIA MACKELPRANG,                    )
                                           )
11                       Plaintiff,        )     Case No.  2:06-cv-00788- JCM-GWF
                                           )
12   vs.                                   )     **ORDER**
                                           )
13   FIDELITY NATIONAL TITLE AGENCY        )
     OF NEVADA, INC., et al.,              )
14                                         )
                         Defendants.       )
15   _____)

16          This matter is before the Court on Defendant Fidelity National Title Agency of Nevada, Inc.'s

17   Motion to Compel Consent Letter From Plaintiff (#38), filed November 27, 2006; Plaintiff's

18   Opposition to Defendant Fidelity National Title Agency of Nevada, Inc.'s Motion to Compel Consent

19   Letter from Plaintiff (#49), filed on December 15, 2006; and Defendant Fidelity National Title Agency

20   of Nevada, Inc.'s Reply to Plaintiff's Opposition to Fidelity's Motion to Compel Consent Letter from

21   Plaintiff (#60), filed on December 29, 2006.  The Court conducted a hearing on this matter on January

22   4, 2007.

23                              **BACKGROUND**

24          This case involves claims by Plaintiff against Defendants for sexual harassment based on gender

25   in violation of Title VII of the Civil Rights Act, and in violation of Nevada Revised Statute (NRS) §

26   613.330, constructive discharge, intentional infliction of emotional distress, negligent infliction of

27   emotional distress, battery, assault, and negligent retention, supervision and training.

28   . . .

1    In her Complaint (#1) filed on June 29, 2006, Plaintiff alleges that she was an employee of
2    Defendant Fidelity National Title Agency of Nevada, Inc. ("Fidelity").  Plaintiff alleges that beginning
3    in or about February 2004, Defendant Brian Bowers ("Bowers"), a vice-president of Fidelity, began
4    sending her inappropriate and sexually explicit emails on her office computer on at least a weekly basis.
5    After Plaintiff's husband became employed by Fidelity in April 2004, Plaintiff alleges  Defendant Peter
6    Dunlap ("Dunlap"), another Fidelity vice-president, coerced Plaintiff into having sexual relations with
7    him under the threat that if she did not do so, her husband would be fired.  Plaintiff alleges that she
8    submitted to Dunlap's unwanted sexual acts out of fear that she and her husband would lose their jobs.
9    Plaintiff alleges that Dunlap also began making inappropriate and sexually explicit remarks to Plaintiff
10   in the office on a regular basis, and that Bowers began increasing his inappropriate and sexually explicit
11   emails and remarks to Plaintiff.  Plaintiff alleges that over the next several months Dunlap continued to
12   coerce her into submitting to numerous sexual acts in and outside the Fidelity office.

13   Plaintiff alleges that in October 2004, she complained to a female vice-president of Fidelity
14   about the sexual harassment but no action was taken, and Bowers and Dunlap continued to engage in
15   their wrongful conduct.  According to the Complaint, Plaintiff's husband was terminated from his
16   employment on January 3, 2005.  On that same date, Plaintiff allegedly complained about the sexual
17   harassment to Fidelity's vice-president of human resources.  She alleges that the vice-president of
18   human resources promised to take care of the situation, but also told Plaintiff that if she brought up the
19   subject again she would be fired.  Plaintiff alleges that on January 6, 2005, she attempted to commit
20   suicide in the workplace.  Plaintiff alleges that following her suicide attempt, she was placed in a
21   mental health facility and thereafter was on a period of short term disability.  She alleges that she
22   attempted to obtain assurances from Fidelity that if she returned to work, the sexual harassment would
23   cease.  Fidelity allegedly failed to respond to her requests, and Plaintiff therefore considered herself to
24   be constructively discharged from employment.  Plaintiff alleges that since leaving Fidelity's
25   employment, she had been diagnosed with post-traumatic stress disorder, major depressive disorder,
26   and panic disorder stemming from the intolerable and discriminatory work environment she was
27   subjected to at Fidelity.  Plaintiff alleges that as a direct result of Defendant's wrongful conduct, she
28   attempted suicide again in late January 2005 and again in March 2006, requiring her to be submitted to

1  a mental health facility on both occasions.

2      Defendant Fidelity's instant Motion to Compel (#38) concerns Defendant's efforts to obtain

3  email communications on two Myspace.com internet accounts allegedly set up by Plaintiff.  Plaintiff

4  has not admitted that these Myspace.com accounts are, in fact, accounts she established or on which she

5  has communicated with other persons.  Defendant's Motion, however, presents sufficient evidence that

6  these accounts belong to the Plaintiff.  According to the affidavit of Defendant's counsel, she

7  discovered the existence of these accounts in or about August 2006, and Defendant Fidelity thereafter

8  served a subpoena on Myspace.com on September 26, 2006 to produce all records for these accounts,

9  including private email communications exchanged between Plaintiff and others.  In response to the

10  subpoena, Myspace.com produced certain "public" information regarding the two accounts, but refused

11  to produce private email messages on either account in the absence of a search warrant or a letter of

12  consent to production by the owner of the account.

13      In one of the Myspace.com accounts, Plaintiff allegedly identified herself as a 39 year old

14  single female and indicates that "I don't want kids."  Records produced to Defendant by Myspace.com

15  indicate that this account was opened on November 6, 2005 and that this account was last logged-into

16  on December 16, 2005.  There was no log-in activity on this account in 2006.  Whether there were other

17  log-ins to this account between November 6, 2005 and the last log-in on December 16, 2005 is

18  unknown.  The other Myspace.com account allegedly identifies Plaintiff as a 39 year old married female

19  with six children and states that Plaintiff loves all her children.  The records produced by Myspace.com

20  indicate that this account was opened on April 30, 2006 and that this account was last logged-into on

21  June 17, 2006.   The records produced by Myspace.com indicate that there were a total of seven (7) log-

22  ins to this account between April 30 and June 17, 2006.

23      On September 29, 2006, Defendant's counsel sent a letter and "Consent and Authorization For

24  Private Messages" to Plaintiff's counsel requesting that Plaintiff execute the consent for Defendants to

25  obtain the private messages on the two Myspace.com accounts.  Plaintiff refused to provide the consent

26  for release of the private messages on the grounds that the information sought by Defendant is

27  irrelevant and improperly invades Plaintiff's privacy.  In its Motion to Compel (#38), Defendant states

28  that it will stipulate that any private message records produced by Myspace.com pursuant to the

1   consent/authorization will be subject to the stipulated protective order previously entered in this case to

2   protect the privacy interests of the parties and prevent disclosure of information to third persons who

3   have no involvement in this litigation.

4                                            **DISCUSSION**

5          Assuming that the two Myspace.com accounts are Plaintiff's accounts, and the evidence

6   suggests they are, Defendant has no information regarding the identities of the persons with whom

7   Plaintiff has exchanged email messages or what the subject matter or content of those email messages

8   are.  Defendant raises a number of issues, however, regarding the type of information that might be

9   contained in the messages that would be relevant to the issues in this case.  Plaintiff contends that

10  Defendant is simply engaging in a "fishing expedition" and has no relevant basis for discovering the

11  private messages on either account.  The Court agrees that Defendant is engaging in a fishing

12  expedition since, at this time, it has nothing more than suspicion or speculation as to what information

13  might be contained in the private messages.  The Court will separately address the allegations raised by

14  Defendant for seeking production of the private messages.

15       1.    **Allegation that Private Messages May Contain Evidence that Plaintiff Engaged in**
             **Consensual Sexually Related Email Communications With Other Persons on**
16            **Myspace.com.**

17         Defendant points to the unusual circumstance that Plaintiff opened a Myspace.com account in

18  November 2005 which identifies herself as a single 39 year old female who does not want to have kids,

19  and that Plaintiff subsequently opened a second Myspace.com account in April 2006 which identifies

20  herself as a married woman with six children whom she loves.  In support of its Motion, Defendant

21  argues that Plaintiff was a willing participant who condoned and actively encouraged the alleged sexual

22  communications with Bowers and Dunlap, and the alleged sexual conduct with Dunlap, and that none

23  of the complained-of conduct actually offended Plaintiff.  Defendant then states:

24              Fidelity believes that Mackelprang was using the private messaging
                functionality on Myspace to facilitate the same types of electronic and
25              physical relationships she has characterized as sexual harassment in her
                Complaint.  If in fact Mackelprang was voluntarily pursuing, encouraging
26              or even engaging in extra-marital relationships on or through Myspace,
                then Fidelity has a right to use this information to rebut Mackelprang's
27              sexual harassment claims and impeach her credibility.

28  *Defendant's Motion to Compel* (#38), pages 7-8.

                                                4

1    Defendant also argues that such evidence, if discovered in the private emails, is relevant to

2    whether Plaintiff, in fact, suffered emotional distress damages as a result of Bowers' and Dunlap's

3    alleged sexual misconduct.

4        The Supreme Court and lower federal courts have held that workplace-related sexual behavior

5    by a plaintiff may be admissible to support a defense in a sexual harassment action that defendant's

6    conduct was not unwelcomed or that defendant had reasonable grounds to believe it was not

7    unwelcomed by the plaintiff.  In *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 68-69, 106 S.Ct. 2399,

8    2406-07 (1986), the Court stated that the plaintiff's sexually provocative speech or dress in the

9    workplace is relevant to the issue of whether she found particular sexual advances unwelcome.  Such

10   evidence may be admissible in a sexual harassment lawsuit where the trier of fact is required to

11   determine the existence of sexual harassment in light of the record as a whole and the totality of the

12   circumstances, such as the nature of the sexual advances and the context in which the alleged incidents

13   occurred.  The Court noted that the district court must carefully weigh the applicable considerations of

14   whether the relevance of the information is outweighed by its potential for unfair prejudice, but stated

15   that such evidence is not *per se* inadmissible.

16       Fed. R. Evid. 412(a), which was amended after *Meritor Sav. Bank, supra,* generally provides

17   that evidence offered to prove that any alleged victim engaged in other sexual behavior or to prove the

18   alleged victim's sexual predisposition is inadmissible in any civil proceeding involving alleged sexual

19   misconduct, except as provide in subsection (c)(2).

20       Rule 412(c)(2) states as follows:

21           In a civil case, evidence offered to prove the sexual behavior or sexual
             predisposition of any alleged victim is admissible if it is otherwise admissible under these rules a
22   outweighs the danger of harm to any victim and of unfair prejudice to any party.  Evidence of the
     alleged victim's reputation is admissible only if it has been placed in controversy by the alleged victim.
23

24       The Advisory Committee Notes state that the rule aims to safeguard the alleged victim against

25   the invasion of privacy, potential embarrassment and sexual stereotyping that is associated with public

26   disclosure of intimate sexual details and the infusion of sexual innuendo into the fact finding process.

27   By affording victims protection in most instances, the rule also encourages victims of sexual

28   misconduct to institute and participate in legal proceedings against alleged offenders.  The rule also

5

recognizes that there are also legitimate and admissible grounds for introducing certain sexual conduct evidence and requires the court to balance the competing interests.  In *B.K.B. v. Maui Police Department*, 276 F.3d 1091,1105 (9th Cir. 2002), the court, in applying Rule 412 in a sexual harassment lawsuit, held that the probative value of evidence of a plaintiff's sexual sophistication or private sexual behavior outside the workplace, generally does not substantially outweigh the unfair prejudice to plaintiff and therefore should not be admitted.  The rule shifts the burden to the proponent of the evidence to justify its admission.  *See A.W. v. I.B. Corp., supra,* 220 F.R.D. 20, 24 (D. Maine 2004).

Although Rule 412(c) governs the admissibility of evidence at trial and does not apply to discovery of a victim's past sexual conduct or predisposition in civil cases, which continue to be governed by Fed. R.Civ. P. 26, the Advisory Notes further state:

> In order not to undermine the rationale of Rule 412, however, courts should enter appropriate orders pursuant to Fed. R. Civ. P. 26(c) to protect the victim against unwarranted inquiries and to ensure confidentiality.  Courts should presumptively issue protective orders barring discovery unless the party seeking discovery makes a showing that the evidence sought to be discovered would be relevant under the facts and theories of the particular case and cannot be obtained except through discovery.  In an action for sexual harassment, for instance, while some evidence of the alleged victim's sexual behavior and/or predisposition in the workplace may perhaps be relevant, non-workplace conduct will usually be irrelevant.  *Cf. Burns v. McGregor Electronic Industries, Inc.*, 989 F.2d 959, 962-63 (8th Cir. 1993) (posing for a nude magazine outside work hours is irrelevant to the issue of unwelcomeness of sexual advances at work).  Confidentiality orders should be presumptively granted as well.

In *Mitchell v. Hutchings*, 116 F.R.D. 481 (D. Utah 1987), the defendants sought to depose persons who had personal (i.e., sexual) relationships with the plaintiffs and a photographer who allegedly took sexually suggestive pictures of one or more of the plaintiffs which were displayed at the police station where plaintiffs and the defendants were employed.  Defendants argued that this discovery was relevant to whether the defendants' alleged sexual conduct was offensive and whether plaintiffs suffered emotional distress as result of the defendants' conduct.  Applying *Meritor Sav. Bank, supra,* the court held that evidence relating to plaintiffs' sexual conduct or behavior in the work environment was obviously relevant if such conduct was known to the defendants.  The court, therefore, held that defendants were entitled to depose the photographer, but only in regard to photographs which

1   were publicly displayed in the police station or which were shown to the defendants.  The court also

2   held that defendants were entitled to depose a co-employee with whom plaintiffs engaged in sexual

3   conduct at the workplace.  The court held, however, that evidence regarding plaintiffs' sexual conduct

4   outside the workplace with persons who were not fellow employees, and which were unknown to

5   defendants, was irrelevant to their affirmative defense that the sexual conduct was welcomed by

6   plaintiffs.

7   　　　*Mitchell* also held that evidence concerning plaintiffs' sexual conduct outside the workplace

8   with non employees was not relevant to the issue of their damages for emotional distress.  In this

9   regard, the court stated:

10   　　　　　Defendants argue that those damages require an inquiry into the sexual
     　　　　behavior of the plaintiffs because sexually promiscuous people are less
11   　　　　likely to be offended by sexual harassment, and thus less damaged.
     　　　　Although defendant's argument has a persuasive ring, this court does not
12   　　　　agree.  Past sexual conduct does not, as defendants would argue, create
     　　　　emotional calluses that lessen the impact of unwelcomed sexual
13   　　　　harassment.  The fact that the plaintiffs may welcome sexual advances
     　　　　from certain individuals has absolutely no bearing on the emotional
14   　　　　trauma they may feel from sexual harassment that is unwelcome. Past
     　　　　sexual conduct does not callous one to subsequent, unwelcomed sexual
15   　　　　advancements.  This court cannot condone a wholesale inquiry into the
     　　　　past sexual conduct of the plaintiffs under such a theory.

16

17   116 F.R.D. at 485.

18   　　　Other courts have similarly refused to allow such discovery under the principles set forth in

19   Fed.R.Evid. 412.  In *Barta v. City & County of Honolulu*, 169 F.R.D. 132, 136 (D. Haw. 1996), the

20   court held that defendants were not entitled to inquire into plaintiff's sexual conduct while she was off-

21   duty, outside the workplace, and which did not involve conduct with the defendants.  The court stated

22   that plaintiff's "sexual conduct in that defined area, remote in time and/or kind from her claims, has no

23   relevance to her claims or applicable defenses."  In *A.W. v. I.B. Corp.*, 224 F.R.D. 20 (D. Maine 2004),

24   the plaintiff alleged that he was sexually harassed by another male employee who engaged in

25   unwelcomed sexual conduct and physical contact with plaintiff of a sexual nature.  At deposition,

26   defendant's counsel sought to question plaintiff about his homosexual conduct, including whether he

27   had multiple sexual partners, engaged in sexual acts in parks or other public places, and whether

28   defendant's allegedly offensive conduct was different from other sexual conduct that plaintiff

1    consensually engaged in with other men.  In regard to the issue of defendant's liability for sexual

2    harassment, the court held that these questions were precisely of the types of intrusive generalized

3    questions about past, private, consensual sexual conduct that courts readily have found marginally, if at

4    all, relevant to sexual harassment claims.  *Id.* 220 F.R.D. at 26.

5         By contrast in *Weiss v. Amoco Oil Co.*, 142 F.R.D. 311 (S.D. Iowa 1992), the plaintiff alleged

6    that he was wrongfully terminated based on false charges of sexual harassment which the defendant

7    employer failed to properly investigate.  Plaintiff sought to depose the alleged victim of the harassment

8    regarding her sexual conduct in the workplace.  The court held that the discovery relating to whether an

9    alleged victim engaged in sexual conduct with other employees of which the plaintiff had preexisting

10   knowledge was potentially admissible and therefore discoverable.  In *Gibbons v. Food Lion*, 1999 WL

11   3326474 (M.D. Flor. 1999), the court also held that the defendant was entitled to obtain discovery

12   whether plaintiff had engaged in sexual relations with other employees outside the workplace.

13        The alleged sexual harassment in this case occurred in 2004.  Plaintiff did not return to work at

14   Fidelity after her alleged January 6, 2005 suicide attempt.  Defendant has, at most, raised a suspicion

15   that Plaintiff may have subsequently engaged in sexually related email communications on the

16   Myspace. com internet account in which she lists herself as a single woman with no children.  The

17   Myspace.com accounts were opened several months after Plaintiff left Defendant's employment.

18   Assuming that the Myspace.com account contains sexually related email messages exchanged between

19   Plaintiff and others, such evidence would not be admissible to support Defendants' defense that their

20   prior alleged sexual conduct was welcomed by Plaintiff.  The courts applying Rule 412 have declined to

21   recognize a sufficiently relevant connection between a plaintiff's non-work related sexual activity and

22   the allegation that he or she was subjected to unwelcome and offensive sexual advancements in the

23   workplace.

24        In regard to Plaintiff's emotional distress damages, the facts here are potentially distinguishable

25   from those in *Mitchell v. Hutchings* or *Barta v. City & County of Honolulu* because Plaintiff's possibly

26   sexually related communications on the Myspace.com account occurred *after* Defendants' alleged

27   sexual harassment.  Evidence that Plaintiff has subsequently engaged in sexually related email

28   communications with other persons may arguably be more relevant to whether Plaintiff  suffered

8

1    emotional distress damages than would evidence of Plaintiff's sexual behavior before the alleged

2    harassment.  Notwithstanding this distinction, the Court finds that the probative value of such evidence

3    does not substantially outweigh its unfair prejudicial effect to Plaintiff.  Again, the courts have

4    generally drawn the line on permissible discovery in this area by permitting discovery of the plaintiff's

5    work-related sexual conduct, but not permitting inquiry into plaintiff's private sexual conduct.  This

6    distinction is based, in part, on the conclusion that what a person views as acceptable or welcomed

7    sexual activity or solicitation in his or her private life, may not be acceptable or welcomed from a

8    fellow employee or a supervisor.  Thus, while the plaintiff's non-work related sexual conduct or

9    behavior may be relevant to some degree in regard to whether she suffered emotional distress damages,

10   its probative value as to either liability or damages is not substantial enough to outweigh the unfair

11   prejudice that its admission would cause.[1]

12        The Court, therefore, concludes that Defendants have failed to demonstrate a relevant basis for

13   obtaining production of Plaintiff's Myspace.com private email messages based on Defendants'

14   suspicion that they may contain sexually explicit or sexually promiscuous content.

15        **2.**    **Defendant's Other Grounds for Seeking Production of the Private Email**
               **Communications.**

16

17        Defendant also argues that it is entitled to obtain production of the Myspace.com private email

18   communications because they may contain statements made by Plaintiff and witnesses about the subject

19   matter of this case which could presumably constitute admissions by Plaintiff or which could

20   potentially be used to impeach the witnesses' testimony.  In addition, Defendant argues that the private

21   email messages may contain information that Plaintiff's alleged severe emotional distress was caused

22   by factors other than Defendant's alleged sexual harassment misconduct.  Defendant notes that

23   Plaintiff's Complaint alleges that Defendant Dunlap was aware in April 2004 that Plaintiff was severely

24   _____

25        [1]There is no evidence or reason to believe that the Myspace.com accounts contain sexually
related email communications between Plaintiff and former co-employees of Fidelity.   Such conduct, if

26   it occurred, would also have taken place after Plaintiff was no longer employed by Defendant. If
Defendants develops some basis, beyond mere speculation, to support a reasonable belief that Plaintiff

27   engaged in sexually email communications on her Myspace.com accounts with former co-employees at

28   Fidelity, the Court might have reason to reconsider Defendant's motion to compel on that ground.

1   distressed about a child custody issue relating to her children and was on depression medication.

2   Defendants also argue that the web page of a Myspace.com account belonging to Plaintiff's son

3   indicates that he moved from Las Vegas to Pennsylvania because of a rift that had grown between

4   himself and Plaintiff.  Finally, as set forth in her Complaint, Plaintiff alleges that she attempted to again

5   commit suicide in March 2006, which she alleges was a direct result of the wrongful acts of the

6   Defendants.  Defendant suggests that Plaintiff's subsequent private email messages could contain

7   information relevant to this suicide attempt.

8          Ordering Plaintiff to execute the consent and authorization form for release of all of the private

9   email messages on Plaintiff's Myspace.com internet accounts would allow Defendants to cast too wide

10   a net for any information that might be relevant and discoverable.  It would, of course, permit

11   Defendants to also obtain irrelevant information, including possibly sexually explicit or sexually

12   promiscuous email communications between Plaintiff and third persons, which are not relevant,

13   admissible or discoverable.

14          The Court agrees with the position taken by the court in *Rozell v. Ross Holst*, 2006 WL 163143

15   (S.D.N.Y.), in regard to a similar request for production of plaintiff's private email communications.  In

16   that case, plaintiff alleged that her supervisor made unwelcome sexual comments and touched her

17   provocatively against her will.  After plaintiff complained to the company, the supervisor retaliated and

18   ultimately terminated plaintiff's employment. Thereafter, when plaintiff's attorney complained to

19   defendant by letter, the supervisor allegedly hacked into plaintiff's email account which she used for

20   work and personal matters and intercepted approximately 400 of her emails.  The court held that

21   plaintiff was required to produce the contents of all of the emails she alleged were wrongfully

22   intercepted because the contents were relevant and potentially admissible to assess plaintiff's damages

23   under her statutory claim for wrongful interception of electronic communications.  The court, however,

24   rejected defendant's argument that it was also entitled to production of all of the non-intercepted emails

25   because they were relevant to plaintiff's sexual harassment claim.  The court noted that "defendants

26   speculate that 'Plaintiff may have communicated facts or contemporaneous impressions regarding her

27   working environment during the relevant time period to friends, relatives or other third parties via

28   email.'"  *Rozell,* at page 3.  Plaintiff's counsel had represented in their discovery responses, however,

10

1   that they had produced all email communications related to plaintiff's claims of sexual harassment.

2   The court stated:

3           If such documents exist, then the defendants have received them.  If not,
            then the defendants are indeed entitled to argue that the absence of such
4           documentation casts doubt on the plaintiff's claims. *Id.*

5           In denying plaintiff's motion to compel, the court commented that anything a person says or

6   does might in some theoretical sense be reflective of her emotional state, but that is hardly justification

7   for requiring production of every thought she may have reduced to writing or, indeed, the depositions of

8   everyone she may have talked to.  The court further stated that it was the obligation of plaintiff and her

9   counsel, in responding to defendants' request for production of relevant email communications to

10  identify and produce those that were relevant to the lawsuit.  In denying defendant's motion to compel

11  production of all non-intercepted emails, the court in *Rozell* stated:

12          The defendants are correct that an interested party cannot be the "final
            arbiter" of relevance.  But counsel for the producing party is the judge of
13          relevance in the first interest.  Discovery in our adversarial system is
            based on a good faith response to demands for production by an attorney
14          constrained by the Federal Rules and by ethical obligations.  Where the
            parties disagree as to the contours of relevance in connection with
15          particular discovery demands, they present their dispute to the court, as
            the parties have done here.  When a party can demonstrate that an
16          adversary may be wrongfully withholding relevant information, it can
            seek relief; in this case the defendants have made no such showing.

17

18          *Rozell* also denied defendant's request that the court conduct an *in camera* review of the non-

19  intercepted emails to identify those which are relevant and should be produced.  The court noted that *in*

20  *camera*  review is ordinarily used when necessary to resolve disputes regarding privilege and is rarely

21  used to determine relevance.   Although the number of emails at issue in this case do not appear to be

22  substantial, the Court agrees with *Rozell* that no basis exists for this Court to conduct an *in camera*

23  review of the Myspace.com private messages to determine if they contain relevant and discoverable

24  information.  Nor has any party requested that the Court conduct such an *in camera* review.

25          Defendants are entitled to discover information relevant to Plaintiff's alleged emotional distress

26  and her mental condition, which she has placed at issue in this case.  In her Complaint, ¶ 52, Plaintiff

27  alleges that she again attempted to commit suicide in March 2006 which she claims was a direct result

28  of Defendants' wrongful act.  The information produced by Myspace.com for the account in which

11

1   Plaintiff lists herself as a married woman with six children indicates that there were seven log-ins to

2   that account between April 30th and June 17, 2006.  It is, therefore, possible that Plaintiff might have

3   made discoverable statements in these email messages regarding her relatively recent March 2006

4   suicide attempt or the causes of her past or contemporaneous emotional distress which would be

5   relevant to assessing the credibility of her emotional distress claims.  Certainly, if such information

6   exists in the email messages, Defendant is entitled to obtain its production.

7         The proper method for obtaining such information, however, is to serve upon Plaintiff properly

8   limited requests for production of *relevant* email communications.  Nothing in this Order prevents

9   Defendants from serving such discovery requests on Plaintiff to produce her Myspace.com private

10  messages that contain information regarding her sexual harassment allegations in this lawsuit or which

11  discuss her alleged emotional distress and the cause(s) thereof.  This, however, does not include private

12  email messages between Plaintiff and third persons regarding allegedly sexually explicit or

13  promiscuous emails not related to Plaintiff's employment with Fidelity.  Moreover, nothing in this

14  Order prevents Defendant from conducting appropriate discovery to determine whether the

15  Myspace.com accounts do, in fact, belong to Plaintiff.  The Court notes that a refusal by Plaintiff to

16  produce relevant and discoverable email communications based on a wrongful and bad faith denial that

17  the Myspace.com accounts belong to her could be grounds for imposing sanctions.  Accordingly,

18        **IT IS HEREBY ORDERED** that Defendant's Motion to Compel Consent Letter From Plaintiff

19  (#38) is **denied**, without prejudice to Defendant's right to pursue discovery of relevant and discoverable

20  private email communications through other proper methods.

21        DATED this 9th day of January, 2007.

22

23                                                    _____

24                                                    GEORGE FOLEY, JR.
                                                      U.S. MAGISTRATE JUDGE .

25

26

27

28

12